IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| KARA LYNN CASTALDO,<br><br>               Plaintiff,<br>v.<br><br>OWEN HORNE,<br><br>               Defendant. | **AMENDED MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:15-cv-149-BCW<br><br>Magistrate Judge Brooke Wells |

This matter comes before the Court on Defendant Horne's Motion for Summary Judgment.[1] Plaintiff has opposed the motion[2] and Defendant replied.[3] This Court has jurisdiction of this matter under 28 U.S.C. § 636(c) as both parties have consented to have this case heard by the assigned Magistrate Judge.[4]

Plaintiff's complaint asserts three causes of action against Officer Horne: (1) illegal expansion of a traffic stop, (2) excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983, and (3) excessive force and unreasonable seizure under Article I, § 14 of the Utah Constitution.[5] Plaintiff is seeking no less than $100,000 in damages. Officer Horne is seeking summary judgment on all causes of action based on qualified immunity because Plaintiff did not suffer a constitutional violation and Officer Horne did not violate clearly established law.

---

[1] Docket No. 20.

[2] Docket No. 23.

[3] Docket No. 24.

[4] Docket No. 8.

[5] Docket No. 2.

**BACKGROUND**

In the early morning hours of July 18, 2015, Plaintiff was driving home from work[6] when she was pulled over by Defendant Horne. There is a dash-cam video that depicts the events that occurred that night, starting when Defendant Horne began following Plaintiff's vehicle.[7] Defendant Horne pulled Plaintiff over because she had a brake light that was not functioning. Plaintiff pulled over right after Defendant put his overhead lights on. Plaintiff did not fully roll her window down.[8] Defendant requested that Plaintiff roll her window down, and Plaintiff replied that it was rolled down. Because Plaintiff did not roll the window down any further, Defendant requested that Plaintiff exit the vehicle. Plaintiff did not exit the vehicle.

Defendant then orders Plaintiff to exit the vehicle and explains that he would like to conduct the rest of the stop outside the vehicle. Plaintiff holds her papers sticking out of the window (her hand does not come past the rolled up window). Defendant did not take the papers. Defendant opens Plaintiff's vehicle door and explains that she can either exit the vehicle or go to jail for refusing to follow his orders. Plaintiff remained in her vehicle. Defendant orders Plaintiff out of the vehicle a number of times, and Plaintiff remained in the vehicle. Finally, Defendant reached into the vehicle, released Plaintiff's seatbelt, and started to pull Plaintiff out of the vehicle. As Defendant grabbed Plaintiff's left arm to pull her from the vehicle Plaintiff grabbed the steering wheel with her right arm. After a minor struggle, Defendant was able to remove Plaintiff from the vehicle.

---

[6] Plaintiff worked as a bartender at the Barrelhouse bar on 24th Street in Ogden.

[7] The Court will "view[ ] the facts in the light depicted by the video[recording]," and will not "adopt a party's version of the facts where 'there is clear contrary video evidence.'" *Valencia v. De Luca*, 612 F. App'x 512, 514 (10th Cir. 2015) (citations omitted), *cert. denied*, 136 S.Ct. 546 (2015), *reh'g denied*, 136 S. Ct. 997 (2016).

[8] Although the parties disagree on exactly how far the window was rolled down, the dash-cam video shows that the window was rolled down less than a third of the way and may be even less than that.

Once outside the vehicle, Defendant placed Plaintiff's wrists behind her back. He handcuffed Plaintiff behind her back and double locked the handcuffs. Plaintiff was searched incident to arrest and placed into the backseat of the patrol car. Thereafter, Defendant conducted an inventory or search of Plaintiff's vehicle[9] and Plaintiff's vehicle was towed for a hold. Plaintiff was transported to Weber County jail and booked. Plaintiff was cited for a lamp violation (Utah Code Ann. § 41-6A-1604) and interference with arresting officer (Utah Code Ann. § 76-8-305).

## STANDARD OF REVIEW

"In general, summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'"[10] Under this standard, "we view the evidence in the light most favorable to the nonmoving party, but that party must set forth specific facts as to those dispositive matters for which it carries the burden of proof in order to demonstrate a genuine issue for trial."[11] "However, summary judgement decisions involving a qualified immunity defense are subject to a somewhat different analysis on review than are other summary judgment rulings."[12]

"When a claim of qualified immunity is raised in a defendant's motion for summary judgment, the plaintiff must show the defendant's actions violated a specific statutory or constitutional right, and 'the constitutional or statutory rights the defendant allegedly violated

---

[9] Under Utah law, Plaintiff claims this was an illegal search of her vehicle and Defendant claims this was a legal inventory taken prior to towing the vehicle. As discussed later in this decision, the Court does not reach Plaintiff's state law claims.

[10] *Oliver v. Woods*, 209 F.3d 1179, 1184 (10th Cir. 2000) (*quoting Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997) *cert. denied*, 522 U.S. 935 (1997)).

[11] *Id.* (*quoting Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993)).

[12] *Id.* (*citing Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995)).

were clearly established at the time of the conduct at issue.'"[13] Then "[t]he trial court decides as a matter of law whether the plaintiff's allegations, if true, state a claim for violation of a clearly established constitutional right."[14] "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[15] Thus, "[i]f the plaintiff fails to show the defendants violated a constitutional or statutory right, or that the asserted violation was clearly established under the law, the defendant is entitled to qualified immunity."[16]

## ANALYSIS

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."[17] "If the law [does] not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."[18]

A two prong analysis has been established to determine whether Defendant is entitled to qualified immunity. "A court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right."[19] The court must also "decide whether

---

[13] *Id*. (*quoting Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).

[14] *Id*. (*citing Romero*, 45 F.3d at 1475).

[15] *Id*. (*quoting Albright*, 51 F.3d at 1535).

[16] *Id*.

[17] *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

[18] *Saucier v. Katz*, 533 U.S. 194, 195 (2001).

[19] *Person,* 555 U.S. at 232 (*citing Saucier*, 533 U.S. at 201).

4

the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."[20] The Tenth Circuit has stated that qualified immunity will "protect all but the plainly incompetent, or those who knowingly violate the law."[21]

### A. Defendant did Not Illegally Expand the Stop

Defendant Horne testified that when Plaintiff initially failed to obey his command to roll down her window, he "was unable to see the vehicle and maintain a tactical advantage."[22] He further testified that he felt Plaintiff posed an immediate threat:

> [Plaintiff] could have had weapons, guns, a vehicle bomb. I had no idea. All I know is that she's not behaving normally. It was an extreme, unusual circumstance and therefore it was an unknown threat. It could have been very serious to me.

The Supreme Court acknowledged such officer safety concerns in *Pennsylvania v. Mimms,*[23] as they "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile."[24] The *Pennsylvania* Court went on to note "we have expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations."[25] In carefully weighing these safety considerations, the Supreme Court found:

> Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle,

---

[20] *Id.*

[21] *Tapia v. City of Albuquerque*, 101 F. App'x 795, 799 (10th Cir. 2004) (*quoting Gross v. Pirtle,* 245 F.3d 1151, 1155 (10th Cir. 2001)).

[22] Docket no. 20-2, Transcript (Tr.) p. 50, ln. 5-6.

[23] 434 U.S. 106 (1977)

[24] *Id.* at 110 ("According to one study, approximately 30% of police shootings occur when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings—A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)").

[25] *Id.* at 110.

> which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as *de minimis.* The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a "'petty indignity.'" *Terry v. Ohio, supra,* 392 U.S. at 17, 88 S.Ct. at 1877. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.[26]

Accordingly, this Court finds that Defendant Horne was acting lawfully and did not violate any constitutional right when he asked Plaintiff to exit her vehicle.

## B. Defendant did Not Use Excessive Force in Removing Plaintiff from Her Vehicle

This Court also must determine whether Defendant Horne violated a constitutional right when he physically removed Plaintiff from her vehicle. "There is no doubt that *Graham v. Connor*[27] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."[28] However, "that right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[29]

The Supreme Court held in *Graham*, "that claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's 'objective

---

[26] *Id*. at 111 (footnote omitted).

[27] 490 U.S. 386 (1989).

[28] *Saucier*, 533 U.S. at 201-202.

[29] *Saucier,* 533 U.S. at 202 (*Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

6

reasonableness standard,' not under substantive due process principles."[30]  "Because 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' . . . the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective."[31]

*Graham* requires "careful attention to the facts and circumstances of each particular case," including the following factors "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[32]  However, the qualified immunity inquiry goes a step further by "acknowledge[ing] reasonable mistakes can be made as to the legal constraints on particular police conduct."[33]

In the case at bar, Defendant physically removed Plaintiff from her vehicle when she refused to exit the vehicle after Defendant ordered her out of the vehicle a number of times.  In removing Plaintiff from the vehicle, Plaintiff resisted by holding on to the steering wheel creating a struggle for Defendant Horne to remove her.  Plaintiff claims that Defendant used unlawful excessive force when he removed her from the vehicle.

Although the severity of the initial crime of having a brake light out is relatively minor, it was Plaintiff's refusal to follow the officer's orders that escalated the stop to Defendant ordering Plaintiff out of the car.  By refusing the officer's order to roll her window down further, and then

---

[30] *Saucier*, 533 U.S. 204 (*citing Graham*, 490 U.S. at 388, 394).

[31] *Saucier*, 533 U.S. at 205 (*quoting Graham*, 490 U.S. at 397).

[32] *Graham*, 490 U.S. at 396.

[33] *Saucier*, 533 U.S. at 205.

refusing to exit the vehicle, Plaintiff elevated Defendant Horne's level of concern for his safety due to her perceived abnormal behavior. Based on her continued refusal to obey Defendant Horne's orders to exit the vehicle, he made the decision to physically remove Plaintiff. From the dash-cam video, it appears that any struggle in removing Plaintiff was caused by Plaintiff's own resistance from grabbing the steering wheel. Once Plaintiff was freed from the vehicle, Defendant was not forceful with Plaintiff when walking her to his car or while handcuffing her.

Under Utah law, a person is guilty of class B misdemeanor if she:

> [H]as knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest *or detention* of that person or another and interferes with the arrest *or detention* by: (2) the arrested person's refusal to perform any act required by lawful order: (a) necessary to effect the arrest or detention; and (b) made by a peace officer involved in the arrest or detention.[34]

Here, Defendant was seeking to effect a detention of Plaintiff for her taillight violation, when Plaintiff refused to obey Defendant's lawful order to exit the vehicle. "[I]n Utah there is no right to physically resist either an arrest or an order of the police, irrespective of the legality of the arrest or order, so long as the officers are within the scope of their authority."[35] By interfering with Defendant's detention of her by refusing to exit her vehicle, Plaintiff gave Defendant cause of her arrest under the interference statute.

Under the first factor of *Graham*, the severity of Plaintiff's crimes "weigh[s] against the use of anything more than minimal force" because the charge underlying her arrest is a misdemeanor.[36] Here, because Plaintiff refused to exit the vehicle as ordered, Defendant opened

---

[34] Utah Code Ann. § 76-8-305 (emphasis added).

[35] *State v. Trane*, 2002 UT 97, ¶ 33, 57 P.3d 1052, 1061 (citations omitted).

[36] *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016).

8

her door and attempted to lift or pull Plaintiff out of the car, but because Plaintiff was holding on to the steering wheel it necessitated more effort by Defendant. Once Plaintiff was removed from the car, Defendant walked her to his car and handcuffed her. Contrary to the cases cited by Plaintiff, the force used by Defendant was not excessive. Defendant did not break Plaintiff's window, he did not rip her out of a broken window, he did not pull her out of the car by her hair, and he did not pepper spray her or taser her. And once Plaintiff was out of the car, Defendant did not throw Plaintiff on the ground and did not physically assault her in anyway. At most, Defendant pulled on Plaintiff "using pressure points, and twisting [her] wrist and arm."[37] This is "no greater force than the force [the court] considered reasonable in *Mecham v. Frazier*, [ ] which involved the use of pepper spray to the face and the physical removal of a resistant traffic-stop suspect."[38] The amount of force used in this case was "minimal in comparison with more drastic techniques, such as the use of pepper spray, tasers, or batons. . . ."[39] This factor weighs in Defendant's favor.

The second factor considered is whether Plaintiff posed an immediate threat to the safety of officers or others. As stated earlier, Defendant testified that he was concerned for his safety when Plaintiff acted abnormally and refused to follow his orders to further roll down her window and then exit the vehicle. Defendant further testified that he believed he may still have been in danger when he went to remove Plaintiff from the vehicle "Well, I'm placing somebody under arrest. As soon as I touched her, she began to actively resist. She could have assaulted me. She

---

[37] *Valencia*, 612 F. App'x at 519.

[38] *Id*. (citations and footnote omitted).

[39] *Id.*

could have had a weapon."[40]  Based on Defendant's testimony he believed based on her behavior that she may have been a danger to him.  In hindsight we know that there is no evidence of a weapon in the vehicle and Defendant was likely in no danger at the point he removed Plaintiff from the vehicle.  However, "from the perspective of a reasonable officer on the scene"[41] Defendant perceived a threat to his safety at that time.  That said, viewing the lack of evidence of an actual threat in a light most favorable to the non-moving party, the Court finds that this factor weighs in the favor of Plaintiff.

Finally, the third *Graham* factor considered is whether Plaintiff actively resisted or attempted to evade arrest.  In considering this factor in *Mecham v. Frazier*, the Tenth Circuit found the officer used objectively reasonable force in pepper spraying and pulling a driver out of the car and placing her on the ground when driver continued to exercise control over the car and refused to get off the phone and get out of the car.[42] In *Simpson v. Kansas*, the Tenth Circuit found that a driver's refusal to comply with an officer's instructions satisfied this factor.[43]

Here, before removing Plaintiff from her vehicle Defendant had ordered Plaintiff to exit her vehicle no less than seven times.  Defendant also warned Plaintiff that if she did not exit the vehicle she would be going to jail.  Plaintiff refused to exit the vehicle, and continued to exercise control over the vehicle by remaining in the driver's seat with the keys.  Further, in the process of removing Plaintiff from vehicle she grabbed on to the steering wheel creating more of a

---

[40] Docket no. 20-2 (Tr. P. 65, ln.15-17).

[41] *Graham*, 490 U.S. at 396 (*citing Terry v. State of Ohio*, 392 U.S. 1, 20-22 (1968)).

[42] 500 F.3d 1200, 1204-1205 (10th Cir. 2007).

[43] 593 F. App'x 790, 797 (10th Cir. 2014).

struggle for Defendant to pull her out of the car. Accordingly, this factor weighs in favor of Defendant.

Based on the foregoing, the Court finds that under the *Graham* factors and considering the totality of the circumstances Defendant did not use excessive force. Plaintiff refused to roll down her window elevating officer safety concerns, then Plaintiff further refused to exit the vehicle after being ordered to do so several times and after she was told that she would be going to jail if she failed to exit the vehicle, and Plaintiff then resisted arrest when Defendant went to remove her from the vehicle. Even if Defendant was mistaken about the proper use of force when there was a minimal threat to his safety, given the totality of the circumstances presented here Defendant's actions were objectively reasonable. Defendant is entitled to qualified immunity and Plaintiff's claims for illegal expansion of a traffic stop and use of excessive force under the U.S. Constitution shall be DISMISSED.

### C. Remand of Plaintiff's State Law Claims

In addition to the federal claims decided above, Plaintiff has also alleged violations under the Utah Constitution. Given that this Court has dismissed Plaintiff's federal claims, it must determine whether it will retain jurisdiction over the state law claims. The "district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and the extent of the pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction."[44] The Tenth Circuit has clarified that "if federal claims are dismissed before trial, leaving issues of state law, the federal court should . . . generally decline to exercise pendant

---

[44] *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

jurisdiction in such instances because 'notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'"[45]

This Court finds no compelling reason to exercise jurisdiction over Plaintiff's state law claims. The original trial date has been vacated and there is currently no trial date or deadlines pending before this Court. The issues in the case have been narrowed to only the state law issues. The incident took place in, and the parties are from, Weber County, Utah. Further, the remaining claims involve important issues of state law that would be best decided by a state court. All of these factors weigh in favor of dismissing Plaintiff's state law claims in her third cause of action without prejudice, rather than this Court exercising supplemental jurisdiction over those claims.

## CONCLUSION

Based on the foregoing, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for Summary Judgement. Plaintiff's federal claims in her first and second causes of action are DISMISSED WITH PREJUDICE. Further, this Court declines to exercise its supplemental jurisdiction and DISMISSES WITHOUT PREJUDICE Plaintiff's state law claims in her third cause of action. Upon issuance of the amended judgment, this action shall be closed.

DATED this 5 July 2017.

_____
Brooke C. Wells
United States Magistrate Judge

---

[45] *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (*citing Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).